<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   LYN PAUL AAROE,                             Chapter 7

                  Debtor.                   Case No.  11-12201 (RTL)

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

BRIAN PLUSHANSKI
CONSTRUCTION COMPANY,

                  Plaintiff,

      v.                                          Adversary Proceeding

                                                 Case No. 11-1180 (RTL)

LYN PAUL AAROE,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**APPEARANCES**:

Kenneth W. Thomas, Esq.
Attorney for Plaintiff

Lyn P. Aaroe, Esq.
PRO SE

**RAYMOND T. LYONS, U.S.B.J.**

**OPINION**

**I.     INTRODUCTION**

Plaintiff, Brian Plushanski Construction Company, seeks a determination of non-

dischargeability of a debt arising from a settlement between it and Debtor Lyn Aaroe because

1

Debtor failed to remit proceeds from sales of lots to Plaintiff in breach of the settlement agreement. Debtor moved to dismiss the complaint. Debtor's actions did not amount to fraud, but merely breach of contract. The debt is dischargeable, and Debtor's motion is granted.

## II.     JURISDICTION

The court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code, or arising in or related to a case under Title 11, to the bankruptcy court.

As the requested relief is non-dischargeability of particular debts, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

## III.    FACTS AND PROCEDURAL HISTORY

The debt at issue in this matter arises from a state-court settlement between the parties. The events leading to and following the settlement were as follows.

1) In 2004, Plaintiff Brian Plushanski Construction Company ("Plushanski") contracted to provide construction work to a real estate development entity ("the developer"). Debtor acted as attorney for the developer and may have had some other connection with that entity, but he was not an owner, nor was he a guarantor of the developer's contract with Plushanski.

2) Plushanski's compensation under the contract was to be secured by a mortgage on Block 15, Lot 5, on the tax map of White Township, New Jersey – the property on which it was to perform the construction. Plushanski never obtained this mortgage.

3) The contract called for payments to Plushanski from the subdivision of the subject property into smaller lots and the sale of those smaller lots. The contract contained a

2

schedule of payments to be made on the first sale of a subdivided lot and every sale thereafter until Plushanski was paid in full. The developer subsequently defaulted on these payments. Specifically:

   a. On February 22, 2006, the developer conveyed lots 5.06, 5.08, 5.11, 5.13, 5.17, and 5.19 to an apparently related entity, for consideration of $1.00, in a deed that Aaroe witnessed as the developer's acting secretary. Aaroe also acted as closing attorney for the seller. The grantee entity's address was listed at Aaroe's office, suggesting that it might be affiliated with or share common ownership with the developer.[1]

   b. Also on February 22, 2006, the developer conveyed lots 5.16, 5.18, and 5.20 to its president and sole owner. This sale was again for consideration of $1.00, and again in a deed that Aaroe witnessed as the developer's acting secretary. The developer's president later re-conveyed lot 5.18 on October 7, 2006, for approximately $570,000, to third-party purchasers. He also re-conveyed lot 5.20 on June 20, 2007, for $495,000, to different third-party purchasers. Aaroe again acted as seller's closing attorney in each of these transactions. Plushanski alleges having received no payment from the proceeds of either of these sales.

4) To recover the payments due under the contract, Plushanski brought a state-court lawsuit against the developer, the developer's president and sole owner, and Aaroe (as the developer's project manager, excavating contractor, acting secretary, and attorney/agent).

---

[1] Indeed, in the subsequent settlement, discussed below, the parties stipulated that these entities shared the same owner.

5) On October 23, 2007, in conjunction with the lawsuit, Plushanski recorded a *lis pendens* on the subject property. Specifically, the *lis pendens* covered lots 5.06, 5.07, 5.10, 5.11, 5.12, 5.13, 5.14, 5.15, 5.16, and 5.19.

6) On March 22, 2008, the parties agreed to a settlement providing that all defendants, including Aaroe, were jointly and severally liable for $390,000.[2] This settlement created the debt that Plushanski now seeks to determine is non-dischargeable. The settlement, like the contract, set forth a schedule of payments to be made on each sale of a subdivided lot. It also called for an initial payment of $60,000 within 30 days of the agreement, upon sale of lot 5.19. The developer appears to have made this sale and paid this amount on or about April 21, 2008.

7) The settlement provided security for this debt through a mortgage on the subject property, specifically lots 5.10 through 5.16. As with the initial contract, Plushanski failed to draft a mortgage for the developer's signature. However, nine months after the settlement, on December 11, 2008, Aaroe drafted the mortgage, had it signed by the developer, and forwarded it to Plushanski's attorney. The mortgage was not recorded until another eleven months later.

8) On October 26, 2009, the developer conveyed lot 5.12 to a third-party purchaser for $105,000. On that same date, the developer's affiliated entity re-conveyed lot 5.13 to the same third-party purchaser, also for $105,000. Again, Aaroe witnessed the deeds and acted as closing attorney for the seller in each of these transactions. In conjunction with these sales, Aaroe also signed affidavits of title swearing that the

---

[2] According to the complaint in the instant case, Aaroe was jointly and severally liable on the contract. In reviewing the contract, the court sees nothing imposing liability for contract obligations on Aaroe personally, but any dispute over this factual point is mooted by the subsequent settlement in which Aaroe assumed liability.

properties were unencumbered. The title search conducted prior to these sales revealed the *lis pendens* on the properties. Plushanski alleges that it was never notified of these sales.[3]

9) On November 13, 2009, Plushanski finally recorded the mortgage.

10) On December 14, 2009, having learned of the post-settlement conveyances, Plushanski served a notice of intent to foreclose on the developer and on the purchaser in the post-settlement conveyances.

11) Later, Plushanski sought to enforce the settlement agreement and obtained a judgment for approximately $385,000 on March 5, 2010. On March 26, 2010, the amount of the judgment was amended to approximately $393,000. In the order memorializing that judgment, the state court struck out proposed language associating the debt with a finding of fraud; that is, the state court expressly refused, when given the opportunity, to make a finding of fraud.

12) Aaroe filed this bankruptcy petition on January 27, 2011.

In addition to allegations relating to the events described above, Plushanski's complaint also contains allegations relating to pre-petition conveyances, for unspecified consideration, from the developer or the developer's president/owner to an entity owned by Aaroe's spouse.

Plushanski has now filed a multi-count adversary complaint alleging fraudulent conveyances, civil conspiracy, professional negligence, breach of fiduciary duty and good faith obligations, false representations, and willful and malicious injury. Each of these counts seeks only compensatory damages, as well as a declaration that the debt is non-dischargeable. The

---

[3] Plushanski's filings do not allege a concurrent re-conveyance of lot 5.11 on this date, also to the same purchaser. Some of the exhibits indicate that this lot may have also been re-conveyed on this date for more than nominal consideration, but it also appears that Plushanski released the *lis pendens* on this lot on December 22, 2008.

willful injury count cites 11 U.S.C. § 523(a)(6), while the remainder of the counts cite to 11 U.S.C . § 523 generally.

To support these claims, Plushanski alleges the facts related above, particularly emphasizing the post-settlement conveyances and the affidavits of title which Aaroe signed in these transactions. At hearing on the motion, the parties represented that Plushanski has filed state court lawsuits against the title company and the buyer in the post-settlement conveyances, ostensibly relying on the lien created by the *lis pendens*.

Pointedly, Plushanski alleges no malfeasance in the creation of the contract or signing of the settlement agreement; all the allegations in the complaint regarding Aaroe's putatively fraudulent or malicious behavior occurred after the transaction in which the contract was signed. Plushanski makes no allegations that Aaroe or the developer did not intend to honor the contract or settlement when they entered into it. Rather, Plushanski's allegations amount to assertions that Aaroe and the developer made certain promises in the settlement agreement, but that they did not, as it turned out, honor those promises. At the hearing, Aaroe represented that the reason that Plushanski did not receive payments was because the developer was cash-strapped and used the funds to pay other creditors, on such debts as those involving real estate taxes and construction equipment. These statements are corroborated by statements made by the developer's president/owner in the deposition he gave to Plushanski's attorney.

Finally, in support of his allegations of fraud, Plushanski urges the applicability of preclusion doctrines and the *Rooker-Feldman* doctrine.

## IV.    TREATMENT AS SUMMARY JUDGMENT MOTION

The motion is styled as a motion to dismiss under FED. R. CIV. P. 12(b)(6). However, as noted above, the parties presented facts at the hearing that were not contained in the original

pleadings. Accordingly, the court informed the parties that, under FED. R. CIV. P. 12(d), it would treat the motion as one for summary judgment. Pursuant to that rule, the court kept the record open to allow the parties an opportunity to present any pertinent material not in the original motion or its opposition. Plushanski used this opportunity to file a letter brief presenting for the first time the recorded mortgage resulting from the settlement.

## V.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation and citation omitted). "In deciding a motion for summary judgment, the judge's function is . . . to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact . . . ." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**VI.     DISCUSSION**

As a first matter, preclusion doctrines and *Rooker-Feldman* do not apply here because, as noted above, there was no finding of fraud in the state court judgment enforcing the settlement agreement.  Thus, the remainder of this analysis addresses the merits of each count of Plushanski's complaint.

   **a.  Count One – Fraudulent Conveyance**

This count of the complaint focuses on the transfers to the entity owned by Aaroe's spouse.  This count requests relief including compensatory damages and a determination of non-dischargeability; with regard to the latter form of relief, the count relies on 11 U.S.C. § 523, but cites no specific subsection.  Read as a fraudulent conveyance claim, this part of the complaint fails to state a cognizable claim, and Aaroe is entitled to judgment as a matter of law.

If this count is an attempt to invoke the bankruptcy-specific fraudulent conveyance statute, 11 U.S.C. § 548, it fails because that section is limited to transfers of "an interest of the debtor in property, or any obligation . . . incurred by the debtor."  Here, there is no allegation that Aaroe had any interest in the developer or any of the properties discussed in the complaint.  Furthermore, even if there were such an allegation, Plushanski would have no standing to raise this claim, as the power to avoid fraudulent conveyances under this section is limited to a trustee. 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . .").

Alternatively, if this count is an attempt to invoke state fraudulent conveyance law, N.J. STAT. § 25:2-1 to :2-34, this court would not have jurisdiction to entertain it, as the statutory remedies for such claims arise against the transferee, the property itself, or the transferor.  N.J. STAT. § 25:2-29.  Again, the complaint does not allege that Aaroe had any interest in the properties at issue, nor that he was the transferee in any of the transactions discussed in the

complaint. Accordingly, any fraudulent conveyance claim arising out of these transactions would not be sufficiently related to this bankruptcy case to support jurisdiction under 28 U.S.C. § 1334(b).

Thus, under any fair reading of this fraudulent conveyance count, Aaroe is entitled to judgment as a matter of law. On the other hand, in view of the relief requested in this count, it may represent a poorly-pled attempt to raise an argument of non-dischargeability under § 523(a)(2); in that case, this count is simply duplicative of count five and fails for the same reasons discussed below in relation to that count.

### b. Count Two – Civil Conspiracy

This count of the complaint alleges that the above-described events amount to a civil conspiracy. This count requests relief including compensatory damages and a determination of non-dischargeability; again, with regard to the latter form of relief, the count relies on 11 U.S.C. § 523, but cites no specific subsection.

The tort of civil conspiracy requires four elements: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003).

Plushanski's complaint fails, as a first matter, to make allegations sufficient to demonstrate these elements. It simply alleges that the events at issue "represent a combination of two or more persons with a common design and purpose . . . as a result of which [Plushanski] has been damaged." There is no allegation as to what that purpose was or that it was unlawful or achieved by unlawful means. As a second matter, the drafting of this count of the complaint is a

9

textbook example of the sort of "formulaic recitation of the elements of a cause of action" that should not survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Accordingly, Aaroe is entitled to judgment as a matter of law on this count as well. Furthermore, if this count is interpreted as a poorly-pled attempt to raise an argument of non-dischargeability under § 523(a)(2) or § 523(a)(6), it fails for the reasons outlined below in relation to counts five and six.

### c. Count Three – Professional Negligence

This count of the complaint argues that Aaroe's acts and omissions, as outlined above, amounted to violations of his professional duties. This count requests relief including compensatory damages and a determination of non-dischargeability; again, with regard to the latter form of relief, the count relies on 11 U.S.C. § 523, but cites no specific subsection.

These claims fail because Plushanski has failed to establish, or even allege, an attorney-client relationship with Aaroe. Thus, Aaroe had no duty to record the mortgage, and Plushanski's allegations regarding Aaroe's failure in this regard do not establish any impropriety.

Plushanski further argues that it had an interest in the proceeds of the post-settlement conveyances, and that Aaroe violated his duties under N.J. RULES OF PROF'L CONDUCT R. 1.15 when he failed to safeguard that money and notify Plushanski of its receipt. However, this rule applies only "upon receiving funds or other property in which a client or third person has an interest." N.J. RULES OF PROF'L CONDUCT R. 1.15. Here, Plushanski has failed to raise a factual issue, or even to allege, that Aaroe received any of the funds from these post-settlement conveyances – into his trust account or otherwise. The allegation is that Aaroe acted as the seller's attorney, but this does not necessarily mean that he received any funds; indeed, the

10

practice in New Jersey is usually for the buyer's attorney to escrow the purchase price and then disburse it to the seller and any lien-holder. Furthermore, it is not clear that Plushanski had an interest in all of the sale proceeds. By the time that these conveyances occurred, Plushanski held an unrecorded mortgage in its favor, signed by the developer. However, one of the post-settlement conveyances was a re-conveyance from a separate entity associated with the developer, of property that had been conveyed away by the developer prior to the granting of the mortgage, meaning that Plushanski had no interest in the proceeds from that sale. Accordingly, Plushanski has failed to allege facts sufficient to require the application of the cited rule. As to Plushanski's argument that Aaroe had some duty to affirmatively ensure payment in accordance with the settlement, the court once again notes that Aaroe did not represent Plushanski, so he owed it no such duty. Again, Aaroe owed Plushanski a contractual obligation to pay over funds, but he owed it no ethical or fiduciary duty to do so.

Plushanski next suggests that Aaroe violated his ethical obligation, under N.J. RULES OF PROF'L CONDUCT R. 4.1, to be truthful in preparing the affidavits of title. This rule prohibits an attorney from knowingly making false statements. Aaroe's response is that he believed the *lis pendens* no longer applied because the litigation had been settled; of note, at the time he prepared the affidavits, the mortgage had not yet been recorded and the judgment enforcing the settlement had not yet been entered.

Rule 4.1 requires a very clear showing of willful dishonesty. *See Essex County Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 435-438 (D.N.J. 1998) (finding that certain communications "did not rise to the level of *willful dishonesty* contemplated by RPC 4.1" despite noting that the speaker "played far too close to the line of reasonable conduct" in making

11

statements that were "technically speaking, not untrue" but were also "not forthcoming and at times disingenuous") (emphasis added).

Whether or not the *lis pendens* applied is a matter to be decided in the state court litigation between Plushanski and the purchasers and the title company. However, for the purposes of this motion, the court need not determine whether the affidavits of title were false, or whether Aaroe actually or reasonably believed that they were true. This is because the establishment of an ethics violation does not, in and of itself, create a non-dischargeable debt. For these reasons, Aaroe is entitled to judgment as a matter of law on this count as well. Furthermore, if this count is interpreted as a poorly-pled attempt to raise an argument of non-dischargeability under § 523(a)(2), (a)(4), or (a)(6), it fails for the reasons outlined below in relation to counts four, five, and six.

### d. Count Four – Breach of Fiduciary and Good Faith Duties and Obligations

This count of the complaint argues that Aaroe's acts and omissions, as outlined above, amounted to violations of fiduciary duties. This count requests relief including compensatory damages and a determination of non-dischargeability; again, with regard to the latter form of relief, the count relies on 11 U.S.C. § 523, but cites no specific subsection.

As noted above, Plushanski does not allege any attorney-client relationship with Aaroe. Under some circumstances, however, an attorney might owe a duty to non-client third parties. *O'Brien v. Cleveland (In re O'Brien)*, 423 B.R. 477, 499 (Bankr. D.N.J. 2010) (citing *Petrillo v. Bachenberg*, 655 A.2d 1354, 1357 (N.J. 1995)). Nevertheless, this type of relationship is not the type of express or technical trust contemplated by § 523(a)(4)'s use of the term "fiduciary." *See Diaz v. Ozarowski (In re Ozarowski)*, No. 02-52981, 2006 Bankr. LEXIS 3521, at *20 (Bankr.

D.N.J. Dec. 12, 2006) ("Numerous Supreme Court decisions have found that the meaning of 'fiduciary' in section 523(a)(4) is limited to instances involving express or technical trusts.").

Accordingly, Plushanski's complaint fails to allege facts sufficient to support a fiduciary relationship with Aaroe, and Aaroe is entitled to judgment as a matter of law on this count as well.

### e. Count Five – Non-Dischargeability Relating to False Misrepresentations

This count of the complaint characterizes Aaroe's involvement in the above-described events as "knowingly false misrepresentations and unconscionable actions/misrepresentations." This count also requests relief including compensatory damages and a determination of non-dischargeability; once again, with regard to the latter form of relief, the count relies on 11 U.S.C. § 523, but cites no specific subsection. The court understands this count to be arguing for non-dischargeability under § 523(a)(2)(A).

On this count, Aaroe is entitled to judgment as a matter of law because Plushanski has failed to allege any malfeasance of the sort contemplated by § 523(a)(2)(A). This subsection speaks of "money, property, services, or an extension, renewal, or refinancing of credit . . . *obtained by*" fraud or misrepresentations. 11 U.S.C. § 523(a)(2) (emphasis added). That is, this subsection provides for non-dischargeability of debts that *arise from* the malfeasance. *See Araps v. DeBaggis (In re DeBaggis)*, 247 B.R. 383, 388 (Bankr. D.N.J. 1999) (stating that "debts incurred through fraud" is an exception to discharge, but that "exceptions to discharge are to be narrowly construed").

The property, services, and extension of credit in this case are the construction services that Plushanski performed for developer under an agreement to defer payment. Aaroe's liability came about through the settlement agreement.[4]

Plushanski has failed even to allege any malfeasance in the inducement of the debt, let alone create a genuine issue of fact on this question. Plushanski relies heavily on the affidavits of title signed by Aaroe, but even if they were fraudulently prepared, they amount to fraudulent representations to the purchaser, not to Plushanski; thus, Plushanski has no standing to assert this claim. Furthermore, they could not have induced Plushanski to enter into the settlement agreement more than a year earlier. *See DeBaggis*, 247 B.R. at 392 ("[I]t would be impossible for [a plaintiff] to rely upon a misrepresentation made in 1996 as an inducement for action taken by him in 1992."). By the same token, none of the allegations can raise a question of fraud in the original contract (on which Aaroe was not personally a signatory) because all of them post-date the execution of that agreement. As to the conveyances themselves, they are not evidence of fraud, but merely broken promises – breach of contract, not fraud. Such garden-variety contract debts are precisely the sort of debts typically within the scope of the bankruptcy discharge.

    **f.** **Count Six – Non-Dischargeability for Willful and Malicious Injury**

This count of the complaint focuses on Aaroe's preparation of deeds and affidavits of title in the post-settlement conveyances, arguing that these actions were willful and malicious and that they caused injury to Plushanski. This count also requests relief including compensatory damages and a determination of non-dischargeability, this time specifically under 11 U.S.C. § 523(a)(6).

---

[4] Of further note, this count should also fail because no property or extension of credit was obtained by Aaroe when he assumed personal liability through the settlement agreement.

In applying § 523(a)(6), courts have interpreted "willful" to mean "voluntary and deliberate." *Kay Berry, Inc. v. Pearman (In re Pearman)*, 432 B.R. 495, 500 (Bankr. D.N.J. 2010) (citing V*iener v. Jacobs (In re Jacobs*), 381 B.R. 128 (Bankr. E.D. Pa. 2008)). More specifically, non-dischargeability under § 523(a)(6) "requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). As for malice, courts apply an objective, "implied malice" approach. *In re Pearman*, 432 B.R. at 501. Under this approach, the inquiry is whether "the debtor caused harm through a deliberate action with an objective substantial certainty of injury." *Id*. (citing *In re Peterson*, 332 B.R. 678, 682-83 (Bankr. D. Del. 2005)).

Here, the developer's president/owner stated in a deposition that the proceeds of these sales went towards paying off taxes, debts on account of construction equipment, and attorneys' fees to Aaroe. Plushanski has made no allegation to support even an inference that Aaroe intended to cause injury by participating in these sales and disbursements. The developer's choice to use limited finds to pay other creditors is not enough to support a claim of willful and malicious injury. Furthermore, it does not appear that the post-settlement conveyances were substantially certain to injure Plushanski, which held a *lis pendens* on the property. If that *lis pendens* is enforceable, then Plushanski's lien against the properties would continue through the conveyance. Accordingly, Aaroe is entitled to judgment as a matter of law on this count as well.

## VII.  CONCLUSION

For the foregoing reasons, Aaroe is entitled to judgment in his favor. The debt is dischargeable, and Aaroe's motion is granted.

**Dated:  July 14, 2011**                              */s/ RAYMOND T. LYONS*
                                                                              United States Bankruptcy Judge